UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 21-cv-81046-MATTHEWMAN

EUGENE E. HOUCHINS III, AS TRUSTEE OF
THE SHARMIN INGHRAM FAMILY
INSURANCE TRUST, a Georgia Trust; and
AMERICAN LIFE FUND CORP., a Georgia
corporation,

    Plaintiffs,

vs.

NOAM WEISS; and SETTLEMENT BENEFITS
ASSOCIATION, INC., a Florida corporation doing
Business as SETTLEMENT BENEFITS ASSOCIATION;
SHARMIN INGHRAM; and JUSTIN INGHRAM,

    Defendants.
_____/

NOAM WEISS; and SETTLEMENT BENEFITS
ASSOCIATION, INC., a Florida corporation doing
Business as SETTLEMENT BENEFITS ASSOCIATION,

    Cross-Plaintiffs,

vs.

SHARMIN INGHRAM and JUSTIN INGHRAM,

    Cross-Defendants.
_____/

**FINDINGS OF FACT AND CONCLUSIONS OF LAW SUPPORTING THE COURT'S RULE 52(c) RULING AGAINST DEFENDANTS SHARMIN INGHRAM AND JUSTIN INGHRAM ON COUNTS FIVE THROUGH EIGHT OF PLAINTIFFS' THIRD AMENDED COMPLAINT**

THIS CAUSE came before the Court on a 4-day bench trial which took place from December 10 through 13, 2024, involving the following seven claims: First Count—negligent

1

misrepresentation brought by both Plaintiffs, Eugene E. Houchins III as Trustee of the Sharmin Inghram Family Insurance Trust ("Houchins") and American Life Fund Corp. ("ALF") (collectively, "Plaintiffs"), against Defendant Noam Weiss ("Weiss") and Defendant Settlement Benefits Association, Inc. ("SBA") (collectively, "SBA Defendants"); Second Count—fraud brought by both Plaintiffs against Weiss and SBA; Third Count—vicarious liability brought by both Plaintiffs against SBA; Fifth Count—fraud brought by both Plaintiffs against Defendant Sharmin Inghram; Sixth Count—fraud brought by both Plaintiffs against Defendant Justin Inghram; Seventh Count—aiding and abetting fraud brought by both Plaintiffs against Defendant Justin Inghram; and Eighth Count—civil conspiracy brought by both Plaintiffs against Defendant Inghrams. [DE 67].[1]

The Inghrams received proper and adequate notice of the trial but did not appear at the duly noticed bench trial. They presented no evidence whatsoever. On December 12, 2024, following the close of Plaintiffs' case, the Court heard Plaintiffs' Rule 52(c) motion for judgment against Defendants Sharmin Inghram and Justin Inghram on counts Five through Eight of Plaintiffs' Third Amended Complaint, and made certain findings of fact on those counts, concluding that all the elements of the counts had been proven by a preponderance of the evidence. [Trial Transcript ("Tr."), Vol. 3, 136:6–11, 137:3–138:11, 138:23–139:23, 140:18–20].

Pursuant to Federal Rule of Civil Procedure 52, the Court issues the following Findings of Fact and Conclusions of Law to memorialize and elaborate upon my oral findings of fact made on December 12, 2024. To the extent that any Findings of Fact may constitute Conclusions of Law, they are adopted as such and vice versa.

---

[1] The instant Findings of Fact and Conclusions of Law address only Counts Five, Six, Seven and Eight against Defendants Justin Inghram and Sharmin Inghram. A separate Findings of Fact and Conclusions of Law will issue in due course to address Counts One, Two and Three against the remaining Defendants, SBA and Weiss.

## I.   FINDINGS OF FACT

Defendants Sharmin Inghram and Justin Inghram were duly and properly noticed but failed to appear at trial and failed to respond to several Court Orders in the case. [Tr., Vol. 1, 19:3–6]. The Court admitted the entirety of the depositions of Sharmin Inghram and Justin Inghram into evidence without objection as Plaintiffs' Exhibit 37/Defendants' Exhibit 52 and Plaintiffs' Exhibit 36/Defendants' Exhibit 53, respectively.[2] [Tr., Vol. 1, 59:16–60:10, 64:4–24].

Based upon that testimony and the testimony of the other witnesses and evidence submitted at trial, the Court finds that, with regard to the Inghrams' credibility, there is no doubt that, in light of the other credible evidence and testimony admitted at trial, Justin Inghram and Sharmin Inghram lied and made false statements in their depositions. [Tr., Vol. 3, 137:7–9]. Based on the trial testimony and exhibits, as well as the Joint Pretrial Stipulation filed herein by Plaintiffs and SBA Defendants ("Joint Pretrial Stipulation") [DE 205], the Court makes the following findings of fact:

1. SBA was a life settlement brokerage, which acted as an intermediary between the owners and beneficiaries of life insurance policies who wished to sell and transfer their interests in those policies prior to the death of the insured to investors/purchasers. Defendant Noam Weiss was a co-founder, owner, and managing partner of SBA. [Joint Pretrial Stipulation ¶ 1 at 5-6].

2. Plaintiff Eugene E. Houchins III has, for eighteen years, been engaged in the buying, selling, and/or brokering of life insurance policies, either in his individual capacity, in his capacity as owner and officer of ALF, and/or in his capacity as a Trustee or Prospective Trustee of a trust formed for that purpose. [Joint Pretrial Stipulation ¶ 2 at 6].

3. A life settlement transaction is the sale of an existing, in-force life insurance policy, by

---

[2] The Remote Zoom Deposition of Sharmin Inghram ("S. Inghram Depo."), was taken on September 6, 2024, and was introduced into evidence as Plaintiffs' Exhibit 37 [DE 253-30]. The Remote Zoom Deposition of Justin Inghram ("J. Inghram Depo."), was taken on September 6, 2024, and was introduced into evidence as Plaintiffs' Exhibit 36 [DE 235-29].

the owner, to a third party for more than its cash surrender value and less than its face amount. In a typical life settlement transaction, the seller receives cash in exchange for transferring the ownership of his or her policy to a buyer, who is purchasing the policy as an investment. [Joint Pretrial Stipulation ¶ 3 at 6].

4. Life settlement brokers, such as SBA, are third-party intermediaries who represent policy owners and assist them in navigating the life settlement market. Typically, SBA would have been contacted by a potential seller of a life insurance policy, and SBA would then build the case file to prepare the life insurance policy for market submission to industry buyers for their purchasing consideration. The prospective buyer will review and consider the information and, once their initial review is complete, will formulate a policy valuation and either decline the file or make an offer to purchase the policy through the broker. If there is competition from other buyers, multiple bids may be made, and the offers typically increase in value. When the broker's bidding process is completed, the policy owner either accepts an offer or decides to keep the policy. If a bid is accepted, the broker assists the policy owner with the buyer's closing requirements until the policy ownership is transferred to the buyer and the sale is completed. [Joint Pretrial Stipulation ¶ 4 at 6].

5. For performing these brokerage services, a life settlement broker, here SBA, will typically receive a commission fee, regardless of the face value of the policy, the source of the medical records obtained, who the purchaser is, who the seller is, or the state where the transaction is performed. [Joint Pretrial Stipulation ¶ 5 at 7].

6. In December 2016, Justin Inghram, through SBA's website, contacted SBA, acting as agent for his wife Sharmin Inghram, regarding the potential sale of Sharmin Inghram's life insurance policy. The subject life insurance policy was Pruco Life Insurance Policy No. 19122260,

which insured the life of Sharmin Inghram for a ten-year term, i.e., through October 2024, with a death benefit of $1,500,000.00 (the "Policy"). Sharmin Inghram was the owner of the Policy, and Justin Inghram was the named beneficiary. [Joint Pretrial Stipulation ¶ 6 at 7; Deposition of Stavros Papadopoulos ("Papadopoulos Depo.") [DE 253-28] at 14:23–15:3, 35:11–23].

7. On December 4, 2016, Stavros Papadopoulos, a former employee of SBA, was designated as the lead broker on behalf of SBA for this matter. After being designated as the lead representative for SBA, Papadopoulos spoke with Justin Inghram on or about December 5, 2016, who informed Papadopoulos that his wife had terminal cancer. [Joint Pretrial Stipulation ¶ 7 at 7; Papadopoulos Depo. at 16:7–13]. This statement by Justin Inghram was knowingly false and fraudulent when made.

8. Throughout the subject transaction, Mr. Papadopoulos was the primary contact between SBA and the Inghrams. Justin Inghram, acting as Sharmin Inghram's agent, on multiple occasions, represented orally to Mr. Papadopoulos his wife had terminal cancer. [Joint Pretrial Stipulation ¶ 7 at 7; Papadapoulos Depo. at 16:7–13, 55:10–17, 56:13–57:17, 58:1–9, 62:10–22]. All such statements by Justin Inghram were knowingly false and fraudulent when made.

9. On November 2, 2017, SBA received Sharmin Inghram's executed Preliminary Life Insurance Appraisal Request and HIPAA form, as well as a copy of Sharmin Inghram's Policy. The executed Preliminary Life Insurance Appraisal Request stated, in part: "I have cancer of the liver." [Joint Pretrial Stipulation ¶ 8 at 7; Papadopoulos Depo. at 53:11–54:1, 55:2–7; Pls.' Ex. 12, DE 235-11]. This representation by Sharmin Inghram was knowingly false and fraudulent when made.

10. On November 6, 2017, SBA received four sets of medical records regarding Sharmin Inghram from Justin Inghram (283 pages total). These medical records indicated Sharmin Inghram

had liver cancer. [Joint Pretrial Stipulation ¶ 9 at 7; Pls.' Ex. 8, DE 235-6 and 235-7].

11. On November 6, 2017, SBA transmitted these medical records, as well as the Preliminary Life Insurance Appraisal Request, HIPAA form, and copy of Sharmin Inghram's Policy, to prospective buyers, including Houchins. [Joint Pretrial Stipulation ¶ 10 at 8].

12. On November 8, 2017, after having received the 283 pages of medical records from SBA, Houchins made an offer on Sharmin Inghram's Policy. [Tr., Vol. 2, 181:10–15, 186:6–13].

13. On November 9, 2017, SBA then transmitted to all prospective buyers, including Houchins, an additional 11 pages of medical records for Sharmin Inghram that SBA explicitly stated it had received from Justin Inghram. [Joint Pretrial Stipulation ¶ 11 at 8; Pls.' Ex. 10, DE 235-9].

14. Justin Inghram and Sharmin Inghram, through her agent Justin Inghram, were aware that the medical records were a necessary part of the application to sell Sharmin Inghram's Policy and that it was foreseeable that SBA would be transmitting those medical records or otherwise revealing their content to prospective buyers. [Papadapoulos Depo. at 40:23–41:4, 66:6–67:1, 68:19–16, 74:18–75:1; S. Inghram Depo at 10:8–16]. Because SBA was acting as Sharmin Inghram's agent in dealing with American Life and Houchins as Trustee, Justin Inghram and Sharmin Inghram intended thereby to make, and effectively did make, that same representation to ALF and Houchins as Trustee, in order to induce them to purchase the Policy. [Papadapoulos Depo. at 40:23–41:4, 42:9–15, 89:19–90:2].

15. Sharmin Inghram has, in fact, never been diagnosed with cancer. [S. Inghram Depo at 7:5–9; Pls.' Ex. 25, DE 253-21; Pls.' Ex. 29, DE 253-25].

16. The Inghrams' representations that Sharmin Inghram had cancer were false and known by the Inghrams to be false at the time they were made. [Pls.' Ex. 25, DE 253-21; Pls.' Ex. 29, DE

253-25; S. Inghram Depo. at 7:5–9; Tr., Vol. 2, 195:22–196:25, 207:13–23].

17. Plaintiffs believed the medical records they had received on November 7, 2017, were authentic and accurate. [Tr., Vol. 2, 161:22–25, 168:6–13, 186:9–13].

18. In reliance on the medical records, on November 15, 2017, Houchins agreed to purchase Sharmin Inghram's Policy for $1,185,000.00, which was comprised of $955,000.00 to the Inghrams and $230,000.00 to SBA as a broker's commission fee. [Tr., Vol. 2, 171:18–172:2, 173:18–174:9, 175:1–21, 181:10–15, 186:6–13].

19. But for the belief that Sharmin Inghram had terminal liver cancer and reliance on this false misrepresentation, Plaintiffs would not have purchased the Policy. [Tr., Vol. 2, 173:18-24, 187:3-5].

20. On November 16, 2017, Houchins sent amended closing documents and change forms to the Inghrams, and that same day, Sharmin Inghram executed the closing documents and change forms, as well as another HIPAA form. [Joint Pretrial Stipulation ¶ 14 at 8; Pls.' Ex. 14, DE 235-13].

21. Houchins went forward with the transaction, paying $955,000 for the Policy and $230,000 for the broker's commission, for a total of $1.185 million. [Tr., Vol. 2, 188:16–25].

22. On or about November 21, 2017, a check was issued in the amount of $955,000.00 to Sharmin Inghram. [Joint Pretrial Stipulation ¶ 15 at 8; Tr., Vol. 2, 189:19–25].

23. The Inghrams accepted payment of $955,000.00. [Joint Pretrial Stipulation ¶ 15 at 8; Defs.' Ex. 20, DE 255-10].

24. On or about December 29, 2017, the Trust issued a check for $230,000.00 to SBA for SBA's commission fee. [Joint Pretrial Stipulation ¶ 16 at 8; Pls.' Ex. 17, DE 235-14].

25. In or about May 2018, as part of a routine follow-up on the purchase, Plaintiffs used

the HIPAA release it had been granted as part of the purchase of Sharmin Inghram's Policy to obtain medical records directly from Sharmin Inghram's health care providers and discovered that Sharmin Inghram's provided medical records were false. [Joint Pretrial Stipulation ¶ 17 at 8–9; Tr., Vol. 2, 162:6–23, 173:14–17, 191:1–24, 195:22–196:12, 196:18–25, 197:1–7, 207:13–25; Pls.' Ex. 25, DE 253-21; Pls.' Ex. 29, DE 253-25].

26. After learning that the records were false, Houchins contacted Justin Inghram and confronted him with his and his wife's fraud and asked him to return the money the Inghrams had been paid for the Policy. Justin Inghram never admitted or acknowledged that the records he had submitted were false and gave several conflicting explanations for how the fraud might have occurred, none of which the Court finds convincing. [Tr., Vol. 2, 216:5–216:5, 218:2–17; J. Inghram Depo. at 49:13–50:4, 98:16–99:5, 105:24–107:15, 108:18–110:11].

27. The Inghrams subsequently returned $260,000.00 to the Trust. [Joint Pretrial Stipulation ¶ 15 at 8; Tr., Vol. 2, 212:22–213:9, 213:25–214:15; Pls.' Ex. 18, DE 235-15]. Justin Inghram agreed to pay the premiums on the Policy going forward and did so until he and his wife declared bankruptcy. [Tr., Vol. 2, 214:16–20, 214:21–215:2, 215:3–15, 215:19–216:3].

28. The Inghrams did not return any additional monies to Plaintiffs. [Joint Pretrial Stipulation ¶ 15 at 8; Tr., Vol. 2, 218:18–20].

29. Houchins is still the trustee of the Sharmin Inghram Trust and still the legal owner of the Policy. ALF is still the beneficiary. [Tr., Vol. 2, 218:21–25].

30. The Court found at trial, that as purchaser and owner of the Policy, and based on his years of experience in the life settlement industry, Houchins was competent as a lay witness under Federal Rule of Evidence, Rule 701, to testify as to what he believes that the value of the Policy is. [Tr., Vol. 2, 219:15–220:8, 220:22–221:14, 240:2–20].

31. The face value of the Policy is still $1.5 million, but in his lay opinion, Houchins believes the current value of the Policy is $0 or "negative." [Tr., Vol. 2, 219:1–6, 240:23–241:20, 244:18–248:23; Pls.' Ex. 34, DE 235-27].

32. As a proximate result of the Inghrams' fraud, Plaintiffs were damaged in the amount of $925,000, which amount is comprised of the payment to the Inghrams of $955,000 plus the commission payment to SBA of $230,000, less the $260,000 returned by the Inghrams. [Tr., Vol. 3, 84:9–24].

## II. CONCLUSIONS OF LAW

### A. Plaintiffs' Fraud Claims (Fifth and Sixth Counts)

To establish a fraud or a fraudulent misrepresentation claim, a plaintiff must allege four elements: "(1) a false statement concerning a material fact; (2) the representor's knowledge that the representation is false; (3) an intention that the representation induce another to act on it; and (4) consequent injury by the party acting in reliance on the representation." *Delgado v. Rutledge*, No. 22-CV-23435-DPG, 2024 WL 3570258, at *4 (S.D. Fla. Mar. 29, 2024) (citing *Hercules Capital, Inc. v. Gittleman*, Case No. 16-cv-81663-MIDDLEBROOKS, 2018 WL 395489, at *21 (S.D. Fla. 2018)). "Justifiable reliance is not a necessary element of fraudulent misrepresentation." *Butler v. Yusem*, 44 So. 3d 102, 105 (Fla. 2010). Thus, "a recipient may rely on the truth of a representation, even though its falsity could have been ascertained had [the recipient] made an investigation, unless [the recipient] knows the representation to be false or its falsity is obvious." *Besett v. Basnett*, 389 So. 2d 995, 998 (Fla. 1960).

"[T]he burden of proof in diversity cases must be allocated according to state, not federal, law." *Shaps v. Provident Life & Accident Insurance Company*, 244 F.3d 876, 881 n.1 (11th Cir. 2001). Plaintiffs must prove their claim for fraud in this action by the "greater weight of the

evidence." *Wieczoreck v. H & H Builders, Inc.,* 475 So. 2d 227, 227–28 (Fla. 1985). "[T]he elements of fraud – particularly including intent and knowledge – may be, and often are, proven by circumstantial evidence." *Global Quest, LLC v. Horizon Yachts, Inc.*, 849 F.3d 1022, 1030 (11th Cir. 2017).

Given the above facts and law, the Court finds that both Sharmin Inghram and Justin Inghram knowingly made false and fraudulent misrepresentations to SBA, and by extension to Plaintiffs, concerning a material fact, with the intent to deceive. The documents that were submitted by Justin Inghram on his wife's behalf and his behalf were knowingly false and fraudulent. Both Sharmin Inghram and Justin Inghram knew at the time they made those misrepresentations, false statements, and false and fraudulent submissions that they were false. Both Sharmin Inghram and Justin Inghram made those misrepresentations, false statements, and false and fraudulent submissions with the intention to induce Plaintiffs to purchase Sharmin Inghram's Policy, and Plaintiffs relied on and were damaged by those misrepresentations, false statements, and false and fraudulent submissions. The Court may and does reasonably infer that Sharmin and Justin Inghram possessed an agency relationship through which Sharmin acknowledged that Justin would act for her with respect to the transactions at issue; Justin accepted that undertaking; and Sharmin retained control over Justin's actions with respect to the transaction. All of the actions taken by Justin Inghram and Sharmin Inghram were done with the fraudulent intent to unlawfully enrich themselves by selling a life insurance policy based on the false pretense that Sharmin Inghram had terminal liver cancer when, in truth and fact, they knew she did not.

### B.  Aiding and Abetting Fraud Claim (Seventh Count)

The elements of an aiding and abetting fraud claim are: "(1) there existed an underlying fraud; (2) the defendant had knowledge of the fraud; and (3) the defendant provided substantial

assistance to advance the commission of the fraud." *ZP No. 54 Ltd. P'ship v. Fidelity & Deposit Co. of Maryland*, 917 So. 2d 368, 372 (Fla. 5th DCA 2005); *see also Connecticut Gen. Life Ins. Co. v. Mayberg*, No. 23-21461-CIV, 2024 WL 1931704, at *11 (S.D. Fla. Apr. 27, 2024), *report and recommendation adopted,* No. 23-CV-21461, 2024 WL 2846403 (S.D. Fla. June 5, 2024).

It is clear from the evidence, and the Court finds, that, at all times relevant to the fraud of Sharmin Inghram with respect to false representations relating to her medical condition and medical records, as alleged above, Justin Inghram: (a) had knowledge of the fraud; and (b) knowingly provided substantial assistance to the commission of the fraud, by making the abovementioned false representations to SBA about her medical condition and gathering and arranging the falsified records and providing them to SBA, knowing that those records would be passed on to prospective buyers. It is clear that Plaintiffs relied on those records in deciding to purchase Sharmin Inghram's Policy and to pay a commission to SBA. All of the actions taken by Justin Inghram and Sharmin Inghram were done with the fraudulent intent to unlawfully enrich themselves by selling a life insurance policy based on the false pretense that Sharmin Inghram had terminal liver cancer when, in truth and fact, they knew she did not.

### C. Plaintiffs' Civil Conspiracy Claim (Eighth Count)

A cause of action for civil conspiracy requires: "(1) an agreement between two or more parties; (2) to do an unlawful act or a lawful act by unlawful means; (3) the execution of some overt act in pursuance of the conspiracy; and (4) damage to the plaintiff as a result of said acts." *Plastiquim S.A. v. Odebrecht Constr., Inc.*, 337 So. 2d 1270, 1273 (Fla. 3d DCA 2022) (citing *Raimi v. Furlong*, 702 So. 2d 1273, 1284 (Fla. 3d DCA 1997); *see also Logan v. Morgan, Lewis & Bockius LLP*, 350 So. 3d 404, 412 (Fla. 2d DCA 2022).

Further, the Court reasonably infers and finds that the acts of Sharmin Inghram and Justin

Inghram, with respect to the fraud regarding Sharmin Inghram's medical condition and medical records, as detailed above, were unlawful and fraudulent and were known by them to be unlawful and fraudulent at the time they were carried out. The Court reasonably infers and finds that those unlawful and fraudulent acts were clearly carried out by Sharmin Inghram and Justin Inghram pursuant to and in implementation of an express prior agreement and scheme among them to engage in those unlawful acts. Sharmin Inghram and Justin Inghram each assisted in some way in the implementation and/or furtherance of that agreement and that scheme, all of which resulted in damage to the Plaintiffs. All of the actions taken by Justin Inghram and Sharmin Inghram were done with the fraudulent intent to unlawfully enrich themselves by selling a life insurance policy based on the false pretense that Sharmin Inghram had terminal liver cancer when, in truth and fact, they knew she did not.

### III. CONCLUSION

The Court finds here, based on this record, that a Rule 52(c) judgment on partial findings should be made against both Sharmin Inghram and Justin Inghram. All of the elements of fraud have been proven by Plaintiffs as to Sharmin Inghram under the Fifth Count. All of the elements of fraud have been proven against Justin Inghram under the Sixth Count. All of the elements of aiding and abetting fraud against Justin Inghram in the Seventh Count have been proven by Plaintiffs, and all of the elements of the Eighth Count, civil conspiracy between Sharmin Inghram and Justin Inghram, have been proven by the Plaintiffs. All four of those counts have been proven by a preponderance of the evidence, and the record is clear and replete with that evidence. [Tr., Vol. 3, 138:3-11, 139:8-18]. Further, any potential defenses have been waived as the Inghrams failed to appear at the duly noticed bench trial and failed to present any evidence whatsoever in support of any defense. Accordingly, the Court grants Plaintiffs' Rule 52(c) Motion for Judgment

against Justin Inghram and Sharmin Inghram on the Fifth, Sixth, Seventh, and Eighth Counts of Plaintiffs' Third Amended Complaint.

For all of the reasons stated above, the Court **FINDS AND ORDERS** as follows:

1. As to the Fifth Count (fraud), the Court finds in favor of Plaintiffs Eugene E. Houchins III as Trustee of the Sharmin Inghram Family Insurance Trust and American Life Fund Corp. and against Defendant Sharmin Inghram.

2. As to the Sixth Count (fraud), the Court finds in favor of Plaintiffs Eugene E. Houchins III as Trustee of the Sharmin Inghram Family Insurance Trust and American Life Fund Corp. and against Defendant Justin Inghram.

3. As to the Seventh Count (aiding and abetting fraud), the Court finds in favor of Plaintiffs Eugene E. Houchins III as Trustee of the Sharmin Inghram Family Insurance Trust and American Life Fund Corp. and against Defendant Justin Inghram.

4. As to the Eighth Count (civil conspiracy), the Court finds in favor of Plaintiffs Eugene E. Houchins III as Trustee of the Sharmin Inghram Family Insurance Trust and American Life Fund Corp. and against Defendants Justin Inghram and Sharmin Inghram.

5. The Court finds that Sharmin Inghram and Justin Inghram are jointly and severally liable to Plaintiffs for damages in the amount of $925,000, for which execution should be issued.

6. The Court will separately enter a final judgment in accordance with Fed. R. Civ. P. 58.

**DONE and ORDERED** in Chambers at West Palm Beach, Palm Beach County, Florida, this 22nd day of January 2025.

WILLIAM MATTHEWMAN
United States Magistrate Judge